NO. 4-21-0598

FILED
May 23, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>      Plaintiff-Appellant,<br>      v.<br>WILLIE A. CURRIE,<br>      Defendant-Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the<br>Circuit Court of<br>Macon County<br>No. 21CF518<br><br>Honorable<br>Rodney S. Forbes,<br>Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Cavanagh and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1   In May 2021, the State charged defendant, Willie A. Currie, with one count of aggravated domestic battery (count I) (720 ILCS 5/12-3.3(a-5) (West 2020)) and two counts of domestic battery (with two prior domestic battery convictions) (counts II and III) (*id.* § 12-3.2(a)(1)). The charges alleged generally that, in April 2021, defendant grabbed Ivie Copeland by the neck and strangled and kicked her. Counts II and III further alleged that defendant was previously convicted in 2010 of aggravated domestic battery in Macon County case No. 10-CF-893 and in 2016 of domestic battery in Macon County case No. 16-CM-1163. The State subsequently amended counts II and III to allege a third prior conviction for domestic battery in Macon County case No. 17-CF-616.

¶ 2   In September 2021, the State filed a motion *in limine* pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2020)), seeking

admission of certified copies of conviction for defendant's three prior domestic battery offenses.

¶ 3    The trial court denied the State's motion, concluding that, without additional evidence, such as live testimony, to provide "relevant purpose and context," admission of the certified convictions alone would be more prejudicial to defendant than probative.

¶ 4    The State appeals, arguing the trial court erred by denying its motion *in limine* because certified copies of conviction alone are an acceptable method of introducing propensity evidence under section 115-7.4.

¶ 5    Because we agree with the State's arguments, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

¶ 6                                    I. BACKGROUND

¶ 7                                    A. The Charges

¶ 8    In May 2021, the State charged defendant with one count of aggravated domestic battery (count I) (720 ILCS 5/12-3.3(a-5) (West 2020)), and two counts of domestic battery (with two prior domestic battery convictions) (counts II and III) (*id.* § 12-3.2(a)(2)). The charges alleged generally that on April 26, 2021, defendant grabbed Copeland by the neck and strangled and kicked her. (We note the statute defines "strangle" as "intentionally impeding the normal breathing or circulation of the blood *** by applying pressure on the throat or neck *** or by blocking the nose or mouth." *Id.* § 12-3.3(a-5).) Counts II and III further alleged that defendant was previously convicted of aggravated domestic battery in Macon County case No. 10-CF-893 and domestic battery in Macon County case No. 16-CM-1163. (The State subsequently amended counts II and III to allege a third prior conviction for domestic battery in Macon County case No. 17-CF-616.)

¶ 9                            B. The State's First Motion *In Limine*

¶ 10    In September 2021, the State filed its "First Motion *In Limine* 725 ILCS 5/115-7.4,"

seeking to admit evidence of defendant's three prior convictions for domestic battery. (We note that, at the time of the motion, the State alleged four prior convictions for domestic battery. Prior to trial, the State clarified that one of the convictions was for simple battery and did not seek admission of that conviction.) In its motion, the State recited the current charges against defendant, noted that Copeland was the alleged victim of those offenses, and referred to the "sworn statement" by the arresting police officer (which had been filed with the circuit clerk following defendant's arrest) for the "basic nature of the circumstances and allegations being made."

¶ 11     According to the sworn statement, defendant and Copeland were in a dating relationship and had two children together at the time of the current offenses. Copeland reported to police that defendant grabbed her by the front of the neck and squeezed for approximately 30 seconds. She also reported that he slapped her and kicked her.

¶ 12     The State asserted its intent to "introduce evidence in its case-in-chief of [defendant's] commission of other offenses of domestic violence" and set forth the provisions and requirements of section 115-7.4 of the Code. 725 ILCS 5/115-7.4 (West 2020). The State then enumerated defendant's prior convictions for domestic battery. Specifically, the State alleged that defendant was convicted (1) in case No. 17-CF-616 of domestic battery with a prior domestic battery conviction, (2) in case No. 16-CM-1163 of domestic battery, and (3) in case No. 10-CF-893 of aggravated domestic battery. The State alleged that the victim of each of these prior offenses was Randi Moore, an "intimate partner" to defendant. The State attached to its motion the charging document and police officer's sworn statement for each case and explained that it was seeking permission to publish these charging documents and sworn statements to the jury at defendant's jury trial.

¶ 13     The State argued that this evidence should be admitted "pursuant to section

115-7.4" because (1) "the defendant is currently accused of offenses of domestic violence," (2) "the evidence sought to be admitted constitutes the commission of other offenses of domestic violence," (3) "the probative value of the evidence sought to be admitted is not substantially outweighed by the danger of undue prejudice to the defendant [because] the prior offenses occurred within the last decade and involved physical violence [to] female intimate partners," (4) "there are factual similarities to the current offenses and the offenses for which the defendant has been convicted," and (5) "the defendant's criminal history indicates that the 2010, 2016, and 2017 convictions are not isolated incidents and if the court excludes time between 2010 and 2021 that defendant was either incarcerated, on parole, or on probation, these two events are not remote in time."

¶ 14 In its prayer for relief, the State requested a hearing "under 725 ILCS 5/115-7.4" and permission to publish the contents of the charging documents and sworn statements relating to defendant's prior convictions for domestic battery.

¶ 15 In defendant's written response, he asked the trial court to deny the State's motion on the grounds that (1) the State did not make a timely disclosure of the evidence it sought to admit, (2) the offenses were not factually similar because they involved different victims and different physical acts, and (3) the offenses were not proximate in time.

¶ 16 Later in September 2021, the trial court conducted a hearing on the State's motion. In support of its motion, the State argued that, because defendant received a four-year sentence for his 2010 conviction, that time should be "tolled" when assessing proximity in time between offenses. The State further argued that all of the offenses involved "intimate partner domestics" as opposed to a sibling or parent domestic battery. The State argued that evidence of three prior domestic battery convictions in a 10-year period was more probative than prejudicial.

- 4 -

¶ 17    Before permitting defendant to respond, the trial court expressed its concern that the State was requesting that the charging documents underlying defendant's prior convictions be published to the jury. The State responded that defendant had been found guilty of the facts alleged in the charging documents, but it was agreeable to simply informing the jury of the convictions instead of handing them copies of the charging documents.

¶ 18    Defendant argued that the motion should be denied because it did not satisfy the statute's requirements that the prior offenses be proximate in time and factually similar. Defendant specifically referred to defendant's 2010 conviction and, although acknowledging that it bore some factual similarity because it involved a strangulation, argued that it was "too far removed in time."

¶ 19    In its ruling, the trial court focused on "the nature of the evidence that is sought to be admitted." The court stated the following:

> "The State is simply asking, at this point, that *** the jury be provided with informations [(charging documents)]. I don't find those informations to be probative. And, I think, that their probative value is outweighed by the prejudicial effect that that would have on the defendant. I think it'd be very prejudicial for a jury to read these informations without having any real basis as to what occurred or what happened."

¶ 20    On this basis, the trial court denied the State's first motion *in limine*. The State then asked to amend the motion to request "the introduction of the certified convictions for the three [prior] cases." The court denied the State's request but permitted it to submit another motion if the State so wished.

¶ 21                    C. The State's Third Motion *In Limine*

¶ 22    After the trial court's ruling on the State's first motion *in limine*, the State filed its

- 5 -

"Third Motion *In Limine* 725 ILCS 5/115-7.4." (We note that the State's "Second Motion *In Limine*" pertained to the admission of jail recordings and is not at issue in this appeal.) This third motion was nearly identical to the first but requested permission to publish the certified copies of conviction instead of the charging documents and sworn statements. Specifically, the motion alleged the following:

> "It is the State's desire that the jury be informed that the Defendant has previously been convicted of Aggravated Domestic Battery based on [s]trangulation, and Domestic Battery on two other prior occasions. It is not the intention to provide the jury with fact specific information about the prior offenses, unless the Defendant calls the facts of the prior offenses into question."

The prayer for relief requested a hearing under section 115-7.4 and permission "to enter into evidence certified records of conviction in Macon County cases 17-CF-616, 16-CM-1163, [and] 10-CF-893" and to "otherwise grant the State permission to inform the jury of the Defendant's convictions *** in a manner [that] the Court [believes to be] fair and appropriate."

¶ 23        The State attached to its motion the same charging documents and affidavits that it attached to the first motion and alleged that these documents "provide[ ] information that the Court can use to make the determinations required under 725 ILCS 5/115-7.4."

¶ 24        In October 2021, the trial court conducted a hearing on the State's third motion *in limine.* The State acknowledged that its prayer for relief in the first motion (seeking to publish the charging documents and affidavits) "was just simply wrong" but, standing on the same substantive arguments it previously made, asked for admission of defendant's prior convictions through "certified conviction." The State also remarked that it was "open to other ways which the [c]ourt may think are more fair to the defendant that still gets the information in."

¶ 25    Defendant argued that two of the prior offenses were not factually similar to the charged offenses. Specifically, defendant remarked that the only factual allegations in case Nos. 17-CF-616 and 16-CM-1163 were that defendant struck Moore. Defendant acknowledged that case No. 10-CF-893 bore some factual similarity to the charged offense in that it involved strangulation, but he argued that it was too remote in time, having occurred 11 years earlier.

¶ 26    The trial court began its ruling by acknowledging that section 115-7.4 allows for the admission of propensity evidence in domestic violence cases and recited the statute's requirement that the court weigh the probative value of the evidence against the risk of undue prejudice to the defendant by considering (1) the proximity in time to the charged offense, (2) the degree of factual similarity to the charged offense, and (3) any other relevant facts or information. The court then stated that it was "not certain from the motion *** what the probative purpose of the evidence would be. Is it to show defendant's motive, intent, or absence of mistake?" The court then remarked as follows:

"So the types of evidence that I have seen admissible are typically testimony of some sort. The act provides that there may be testimony as to reputation or testimony in the form of expert opinion, and it may be made by specific instances of conduct. It doesn't state specifically how that specific instances [*sic*] of conduct is to be proven.

At this time, the State is asking to submit copies of certified convictions along with the sworn statements of officers in the correlating cases in which the defendant was convicted.

I'm not certain that a jury would be able to determine from the certified conviction alone what nexus this case has to the case at bar. I don't know if it would

- 7 -

be offered to show the defendant's motive, intent, or lack of mistake or volatile nature or a tendency to commit acts of violence against intimate partners. I'm not certain what it would be offered for, although I think we're getting close. I believe there's probably something there, I just don't know from the motion specifically.

And then one of the things that I had the most concern of is that the State is also asking that the affidavit that was attached, the officer's sworn statement, that affidavit, also be presented to a jury, and that's just an affidavit. That wouldn't be subject to cross-examination in any way. Is that correct?"

¶ 27 The State then clarified that it sought to submit only copies of the certified convictions to the jury. The State explained that it referred to the sworn statements (affidavits) in the motion only because

"the affidavits gives [*sic*] this Court the opportunity to compare those affidavits with the affidavit of this case so that [it] can make the findings as to whether it is similar enough in nature, remote enough in time, gives you the factual—other than me simply just saying he was convicted of domestic battery in 2017."

¶ 28 After confirming that the State was seeking only to inform the jury "simply that [defendant] was convicted," the trial court questioned how probative the mere fact of conviction would be. The court then noted that it looked for guidance in the case law regarding whether it could "just provide a certified conviction of the prior offense" and that it needed more time to review the case law. Prior to recessing, the court stated, "[C]ertainly, testimony as to these [prior] offenses would be admissible, so the alleged victim in this, Randi Moore, that certainly would be admissible, but whether or not the certified convictions alone without that additional testimony, I'm not sure."

¶ 29         The trial court invited the parties to submit any additional authority they wished the court to consider. Three days after the hearing, the State submitted a brief in support of its motion. Apparently concerned with the court's uncertainty regarding the relevant purpose of the certified convictions, the State clarified that the "primary reason for introducing the priors is to show propensity, although this evidence will also be used to show motive, intent, and absence of mistake."

¶ 30         Defendant did not submit any additional authority or argument.

¶ 31         Later in October 2021, the trial court issued a written order denying the State's motion. First, the court found that the State "did not initially, specifically identify what the relevant purpose of the prior convictions was." The trial court expressed concern that the State "did not offer the evidence to establish defendant's motive, intent, absence of mistake in harming the victim, or the defendant's propensity to commit the charged offense." The court opined that "it would be improper for the court to determine or guess as to why the State is seeking to introduce the evidence."

¶ 32         The trial court then found that "the proximity in time and factual similarities of the prior offenses weigh in favor of admitting some evidence related to the prior convictions in this case. For instance, if the victim Randi Moore were to testify regarding the basis for the prior convictions, that evidence would be probative." The court concluded, however, that "certified copies of the defendant's three prior convictions, without any testimony that would establish the context or relevant purpose of the propensity evidence" is "not very probative" and "would be exceptionally prejudicial to the defendant." Accordingly, the court found that "the probative value of the certified copies of conviction is substantially outweighed by the undue prejudice to the defendant, even if that evidence is offered to show Defendant's motive, intent, or lack of mistake,"

and denied the State's motion.

¶ 33    The State filed a certificate of substantial impairment, and this appeal followed. See Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017).

¶ 34                                    II. ANALYSIS

¶ 35    The State appeals, arguing the trial court erred by denying its motion *in limine* because the admission of certified copies of conviction alone is an acceptable method of presenting propensity evidence pursuant to section 115-7.4. 725 ILCS 5/115-7.4 (West 2020).

¶ 36    Because we agree with the State, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

¶ 37                                    A. Jurisdiction

¶ 38    As an initial matter, defendant argues that the State's appeal should be dismissed for lack of jurisdiction pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017) because the trial court's denial of the State's motion *in limine* did not have the substantive effect of suppressing evidence. Defendant contends that because the court's order does not prohibit the State from presenting live testimony, it affects only the manner by which the State may present evidence of defendant's prior convictions.

¶ 39    The State responds that because certified copies of conviction for defendant's prior offenses constitute evidence different from the victim's testimony describing the prior offenses, the court's order suppresses evidence of defendant's prior convictions. We agree.

¶ 40                                    1. *The Applicable Law*

¶ 41    Rule 604(a)(1) reads as follows: "When State May Appeal. In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in *** quashing an arrest or search warrant; or suppressing evidence." *Id.* "[T]he substantive effect of a

- 10 -

trial court's pretrial order, not the label of the order or its underlying motion, controls appealability under Rule 604(a)(1)." *People v. Drum*, 194 Ill. 2d 485, 489, 743 N.E.2d 44, 46 (2000). Evidence is "suppressed" within the meaning of Rule 604(a)(1) when the trial court's order "prevents *** information from being presented to the fact finder." *Id.* at 492.

¶ 42 Before the State may obtain review of a suppression order under Rule 604(a), the State must certify to the trial court that the suppression order substantially impairs its ability to prosecute the case. *People v. Turner*, 367 Ill. App. 3d 490, 494, 854 N.E.2d 1139, 1143 (2006). "A good-faith evaluation by the prosecutor of the impact of a suppression order is sufficient to meet the State's burden." *Id.* at 495 (citing *People v. Keith*, 148 Ill. 2d 32, 40, 591 N.E.2d 449, 452 (1992)); see also *People v. Young*, 82 Ill. 2d 234, 247-48, 412 N.E.2d 501, 507 (1980).

¶ 43 We review *de novo* whether the State may take an interlocutory appeal under Rule 604(a). *Drum*, 194 Ill. 2d at 488.

¶ 44                                   2. *This Case*

¶ 45 We agree with the State that the trial court's order has the substantive effect of suppressing evidence of defendant's three prior convictions for domestic battery. Although the court's order arguably left open the possibility that the victim of the prior offenses could testify about them, the victim's testimony about the offenses and the certified copies of conviction for the offenses are not the same evidence. The victim's testimony constitutes evidence that the offenses occurred, but that testimony (1) could be contradicted at trial and (2) need not be believed by the trier of fact. In contrast, the certified copies of conviction are (1) definitive proof that defendant committed the offenses in question and (2) cannot be disputed. The court's order prohibiting the admission of the certified copies of conviction prevents the fact that defendant was found guilty of those prior offenses from being presented to the jury. Accordingly, because the court's order

- 11 -

prevents the jury from learning of defendant's convictions, the court's order is appealable. *Id.* at 492.

¶ 46 Defendant relies on *People v. Truitt*, 175 Ill. 2d 148, 676 N.E.2d 665 (1997), *abrogated on other grounds by People v. Miller*, 202 Ill. 2d 328, 781 N.E.2d 300 (2002), and *In re K.E.F.*, 235 Ill. 2d 530, 922 N.E.2d 322 (2009), in support of his position, but those cases are distinguishable.

¶ 47 In *Truitt*, prior to trial, the State announced its intention to introduce a chemist's written laboratory report in lieu of presenting the chemist's live testimony, pursuant to section 115-15 of the Code (725 ILCS 5/115-15 (West 1994)). *Truitt*, 175 Ill. 2d at 149-50. The trial court found the statute unconstitutional, meaning the State would have to call the chemist to testify at trial in order to have the results of her analysis admitted into evidence. *Id.* at 150. The Illinois Supreme Court held that it lacked jurisdiction over the State's interlocutory appeal because the order did "not prevent any facts or opinions from being presented to the jury." *Id.* at 152-53. The court observed, "[The] statute does not alter what the State is required to prove. It merely simplifies how the State may present its evidence by creating a limited exception to the normal hearsay rules." *Id.* at 149. The court concluded, "Instead of being able to rely on a piece of paper, the State will have to present testimony from an actual witness." *Id.* at 152.

¶ 48 In *K.E.F.*, a juvenile delinquency proceeding involving allegations of sexual assault, the State sought to have the victim's recorded statement admitted pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)). *K.E.F.*, 235 Ill. 2d at 532-33. At the section 115-10 hearing, the State offered the testimony of a forensic interviewer and a DVD recording of the victim's statement to the interviewer. *Id.* at 533. The trial court found the recorded statement admissible " 'assuming the other provisions of section 115-10 are satisfied.' " *Id.* At the

adjudicatory hearing, the State called the victim to testify but asked her only if what she told the forensic interviewer was true; the State did not ask the victim any questions regarding the alleged offenses. *Id.* The trial court denied the State's motion to admit the victim's recorded statement pursuant to section 115-10 because by failing to ask the victim about the offenses, the State made the victim unavailable for cross-examination. *Id.* at 533-35. As such, the State did not comply with the requirement of section 115-10 that the victim either (1) testify at the proceeding or (2) be unavailable as a witness. *Id.*; see also 725 ILCS 5/115-10(b)(2)(A), (B) (West 2006).

¶ 49     The State announced its intention to seek an interlocutory appeal, and the parties presented arguments regarding the suppressive effect of the trial court's order. *K.E.F.*, 235 Ill. 2d at 535. The court, seemingly frustrated, stated, " 'I don't know why we're going through this song and dance; *** [the witness] is here. Get her up here. Have her say ["]I don't have a clue what you're talking about, admit the tape,["] or have her say ["]this is what happened, admit the tape.["] ' " *Id.*

¶ 50     The Illinois Supreme Court concluded it lacked jurisdiction over the State's interlocutory appeal because "[the] situation [before it] falls squarely within the holding of *Truitt*. *** As in *Truitt*, the prosecution had the option of presenting live testimony to secure admission of the information it sought to introduce, an option that it declined to pursue." *Id.* at 540. The court observed that, like in *Truitt*, the "sole impact" of the trial court's order was to affect the means by which the information could be presented. *Id.*

¶ 51     These cases are unlike the one before us. In both *Truitt* and *K.E.F.*, a live witness was an alternative method of presenting the same information. That is to say, in *Truitt*, the chemist could testify to the same facts that were contained in her report. In *K.E.F.*, the victim could testify regarding the (1) sexual offenses alleged in the petition and (2) her description of them to the

- 13 -

forensic interviewer.

¶ 52    By contrast, as we noted earlier (*supra* ¶ 45), in the case before us, the live witness is not an alternate means of presenting the same information. The State seeks to inform the jury that defendant was *convicted* of three prior acts of domestic violence. In Illinois, a prior conviction is proved by (1) "the certified record of the prior conviction or an authenticated copy of the conviction, and proof of identity between the name on the record and the defendant on trial" or (2) by judicial notice. *People v. White*, 311 Ill. App. 3d 374, 380, 724 N.E.2d 572, 577 (2000). Although the victim of defendant's prior offenses can testify that defendant battered her, she cannot testify that he was found guilty of battering her. The certified record of conviction is the *only* means to prove defendant was found guilty of battering her. Because the live witness in the case before us it not simply an alternate means of presenting the same facts to the jury, we conclude (1) *Truitt* and *K.E.F.* are inapplicable to our analysis and (2) the trial court's order has the effect of suppressing evidence. Accordingly, we conclude that we have jurisdiction to hear this appeal.

¶ 53                      B. Other-Crimes Evidence

¶ 54                      1. *The Applicable Law*

¶ 55             a. Propensity Evidence Under Section 115-7.4

¶ 56    Ordinarily, evidence of other crimes is admissible if it is relevant for any purpose other than to show a defendant's propensity to commit crimes. *People v. Dabbs*, 239 Ill. 2d 277, 283, 940 N.E.2d 1088, 1093 (2010). Such purposes include motive, intent, identity, and *modus operandi*. *People v. Illgen*, 145 Ill. 2d 353, 364-65, 583 N.E.2d 515, 519 (1991).

¶ 57    However, section 115-7.4 of the Code creates a statutory exception to this rule in domestic battery prosecutions. 725 ILCS 5/115-7.4 (West 2020). As this court has noted, under section 115-7.4, when a defendant is charged with domestic battery, evidence of his commission

of other offenses of domestic violence " 'may be considered by the jury for any relevant matter, *including the defendant's propensity to commit the charged crime*.' " (Emphasis in original.) *People v. Irons*, 2017 IL App (4th) 150295, ¶ 33, 80 N.E.3d 134 (quoting *People v. Heller*, 2017 IL App (4th) 140658, ¶ 65, 71 N.E.3d 113, *abrogated on other grounds by People v. Veach*, 2017 IL 120649, 89 N.E.3d 366).

¶ 58        Section 115-7.4 of the Code reads as follows:

"(a) In a criminal prosecution in which the defendant is accused of an offense of domestic violence *** evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on any matter to which it is relevant.

(b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances.

***

(d) In a criminal case in which evidence is offered under this Section, proof may be made by specific instances of conduct, testimony as to reputation, or testimony in the form of an expert opinion, except that the prosecution may offer reputation testimony only after the opposing party has offered that testimony." 725 ILCS 5/115-7.4 (West 2020).

¶ 59        In affirming the constitutionality of the statute in *Dabbs*, the Illinois Supreme

- 15 -

Court wrote the following:

> "We hold *** that the plain meaning of section 115-7.4 *** is that evidence of a defendant's commission of other acts of domestic violence may be admitted in a prosecution for one of the offenses enumerated in the statute, so long as the evidence is relevant and its probative value is not substantially outweighed by the risk of undue prejudice." *Dabbs*, 239 Ill. 2d at 291.

¶ 60                                    b. Standard of Review

¶ 61            We ordinarily review a trial court's judgment regarding the admissibility of other-crimes evidence for an abuse of discretion. *Id.* at 284. However, when the question before the reviewing court is purely a question of law, our review is *de novo. People v. Palen*, 2016 IL App (4th) 140228, ¶ 36, 64 N.E.3d 181 (" '[W]here *** neither the facts nor the credibility of witnesses is at issue, we address a purely legal question, and our standard of review is *de novo*.' ").

¶ 62            Whether certified copies of conviction alone are an acceptable method of introducing other-crimes evidence under section 115-7.4 is a question of law that we review *de novo*.

¶ 63                                    2. *This Case*

¶ 64            The State argues that the trial court erred by denying its motion *in limine* because certified copies of conviction alone are an acceptable method for introducing evidence under section 115-7.4. Defendant responds that the trial court correctly ruled that copies of certified convictions, "without any testimony or evidence to prove their context or relevant purpose," were so prejudicial that their probative value was substantially outweighed by the undue prejudice to defendant.

¶ 65            We conclude that the trial court's oral ruling and written order demonstrate that the

court's findings were based on apparent misapprehensions of law. The trial court's ultimate finding—that the probative value of the certified copies of conviction was substantially outweighed by the undue prejudice to defendant—is rooted in the trial court's erroneous belief that evidence *in addition* to the certified convictions was necessary to provide "context or relevant purpose" to the convictions so that the jury can adequately assess what weight to give the other-crimes evidence. We address "relevant purpose" and "context" in turn, and then we address the trial court's misapplication of existing case law.

¶ 66                                    a. Relevant Purpose

¶ 67          At the hearing on the State's third motion, the trial court correctly observed, "[Section] 115-7.4 allows for evidence in domestic violence cases. It allows for propensity evidence." However, the court continued as follows:

> "I'm not certain from the motion *** as to what the probative purpose of the evidence would be. Is it to show defendant's motive, intent, or absence of mistake? I'm not certain exactly what the State is attempting to prove, so I have that question.
>
>                                    * * *
>
> I'm not certain that a jury would be able to determine from the certified conviction alone what nexus this case has to the case at bar. I don't know if it would be offered to show the defendant's motive, intent, or lack of mistake or volatile nature or a tendency to commit acts of violence against intimate partners. I'm not certain what it would be offered for, although I think we're getting close. I believe there's probably something there, I just don't know from the motion specifically."

¶ 68          The trial court subsequently issued its written ruling in which the court again

correctly noted that, "The State seeks to introduce propensity evidence related to defendant's three prior convictions for domestic battery ***." In the next paragraph, however, the court wrote the following:

> "Although propensity evidence may be offered for any purpose that is relevant (725 ILCS 5/115-7.4(a)), the State did not initially, specifically identify what the relevant purpose of the prior convictions was. Instead, the State merely argued in general terms that all three convictions constitute domestic violence offenses and therefore should be admitted. For example, the State did not offer the evidence to establish defendant's motive, intent, absence of mistake in harming the victim, or the defendant's propensity to commit the charged offense. It was not offered to show defendant's volatile personality or that defendant has a propensity to commit acts of violence toward intimate partners."

¶ 69    The trial court continued as follows:

> "Certainly there may be a relevant purpose that would justify the admission of some type of evidence related to defendant's prior convictions. However, it was not initially, specifically identified, and it would be improper for the court to determine, or guess as to why the State is seeking to introduce the evidence."

¶ 70    The trial court's findings are perplexing. No one needed to guess the purpose of the other-crimes evidence; it is eminently clear from the record in this case that the State offered the evidence to demonstrate the defendant's propensity to commit acts of domestic violence.

¶ 71    For example, at the hearing on the first motion *in limine*, the State argued, "The legislature determined that in these situations a *propensity* to commit this type of offense is relevant and should be considered by *** the jury. And *** three domestic battery convictions in the course

- 18 -

of [the] last ten years and the domestic battery prosecution is absolutely probative." (Emphasis added.) The trial court expressed its apparent understanding that the evidence was being offered for propensity when it clarified with the State, "So, in this case you're offering *** specific instances of conduct that you'd like the Court to present to the jury for their consideration as evidence, propensity evidence[?]" And the State responded affirmatively.

¶ 72        At the hearing on the third motion *in limine*, the State incorporated by reference all of its "substantive arguments" from the hearing on the first motion and focused its argument on the "methodology" of admitting the evidence. Defense counsel appeared to understand that the purpose of the evidence was to demonstrate defendant's propensity to commit domestic battery when she acknowledged at the beginning of her argument that "the purpose of 115-7[.]4, the statute under which we are functioning today, *** is to allow for propensity evidence."

¶ 73        The trial court's oral and written comments demonstrate confusion about the application of section 115-7.4. The statute partially abrogates the common law rule disallowing evidence of a defendant's propensity to commit crimes to specifically allow in a domestic violence prosecution evidence of a defendant's propensity to commit domestic violence offenses. The statute thus serves as an expansion of the common law rule permitting other-crimes evidence for the purposes of intent, motive, absence of mistake, and *modus operandi*. Put another way, the statute adds "propensity" in domestic violence cases to the common law list of purposes for which certain other-crimes evidence may be admitted, such as "intent," "motive," "absence of mistake," and "*modus operandi*." And we wish to emphasize that if evidence at a defendant's trial on a charge of domestic violence shows the defendant's propensity to commit domestic violence, that evidence need not also constitute evidence admissible for other purposes, such as motive or *modus operandi*, to be admissible under section 115-7.4.

¶ 74    To the extent (as shown by its written order) that the trial court required the State to identify a relevant purpose beyond or in addition to defendant's propensity to commit acts of domestic violence as a prerequisite to admission of defendant's convictions of domestic violence, the trial court applied the law incorrectly. See *Dabbs*, 239 Ill. 2d at 295 ("[S]ection 115-7.4 *** permits the trial court to allow admission of evidence of other crimes of domestic violence to establish the propensity of a defendant to commit a crime of domestic violence ***.").

¶ 75    Moreover, in finding that the State "did not offer the evidence to establish defendant's *** propensity to commit the charged offense," the trial court was simply wrong. The record establishes with clarity that (1) propensity was the intended purpose of the evidence and (2) both the trial court and defendant were aware of this purpose as early as the court's hearing on the State's first motion *in limine*.

¶ 76                                b. Context

¶ 77    Another reason for the trial court's finding that admission of the certified convictions alone would be unduly prejudicial to the defendant was that the convictions, on their own, did not provide sufficient "context" for the jury to determine what weight to give to the convictions. In this manner, too, the trial court misapprehended the purpose and application of section 115-7.4.

¶ 78    The trial court's statement that the jury needs additional "context" surrounding the convictions confuses the role of the jury at trial with the role of the trial court at the section 115-7.4 hearing. This court confronted this issue in *Heller*, 2017 IL App (4th) 140658, ¶¶ 60-66, when we considered an improper jury instruction given to a jury that had received propensity evidence pursuant to section 115-7.4.

¶ 79    In *Heller*, the jury was instructed that the other-crimes evidence could be

considered only " 'on the issues of the factual similarity and proximity in time.' " *Id.* ¶ 66. This court concluded that instruction was incorrect and explained why as follows:

> "The issues of factual similarity and proximity in time are to be considered *by the trial court* when determining whether the other-crimes evidence should be admitted. Once admitted, the evidence may be used by the jury for 'any relevant matter.' To say that the evidence may be used by the jury only on the issues of factual similarity and proximity in time confuses the role of the jury with that of the trial court." (Emphasis in original.) *Id.*

¶ 80 Here, the trial court's judgment demonstrates the same confusion. It is the trial court that should consider the "context" surrounding the prior convictions in order to serve its gatekeeping function at the section 115-7.4 hearing. The "context" is required for the trial court to conduct the balancing test to determine admissibility. Once admitted, the evidence may be considered "for any relevant purpose."

¶ 81 Additionally, by enacting section 115-7.4, the legislature has determined that a defendant's *status* as a person who has been previously convicted of domestic battery is something the jury should hear. And a copy of a certified conviction is the best method of proving that status. As discussed earlier (*supra* ¶¶ 45, 52), a certified copy of conviction for domestic battery is different in kind from live testimony about the circumstances of that offense. A certified conviction proves the defendant's status as having been convicted of the offense and cannot be disputed. By contrast, testimony that defendant committed the offense of domestic violence (1) could be contradicted at trial and (2) need not be believed by the trier of fact.

¶ 82 In the absence of a conviction, the jury must necessarily make credibility determinations in order to decide whether a defendant did or did not commit the offense. In such

a case, the jury may need additional context to make those credibility determinations. Under those circumstances, the trial court is tasked with determining how much information about the offense the jury should receive and should take care to admit only as much evidence as is necessary to establish propensity, thereby avoiding a "mini-trial" on the prior offense. *People v. Smith*, 406 Ill. App. 3d 747, 755-56, 941 N.E.2d 419, 426-27 (2010).

¶ 83        However, in a case in which the issue is the admissibility of a certified copy of conviction—such as the one before us—no such credibility determinations need to be made or are even appropriate. The conviction is incontrovertible proof that the defendant committed the crime. Accordingly, the jury does not need any "context" to somehow further describe the domestic violence offense of which the defendant was convicted.

¶ 84        We agree with the State that presenting additional "context" surrounding the convictions *increases* the risk of prejudice to a defendant. For example, hearing two women describe how it felt when a defendant choked them, or hit, punched, or kicked them, is much more prejudicial than hearing those details from just one victim. The admission of a certified copy of conviction alone both (1) reduces that risk of prejudice and (2) serves the legislative purpose of addressing "the difficulties of proof unique to the prosecution of domestic violence crimes by strengthening the evidence in such cases and promoting the prosecution of such cases." *People v. Dabbs*, 396 Ill. App. 3d 622, 627, 919 N.E.2d 501, 505 (2009), *aff'd*, 239 Ill. 2d 277 (2010).

¶ 85                    c. The Trial Court's Misapprehension of Other Authority

¶ 86        Finally, the trial court found that there was no "direct authority" or "persuasive authority to suggest that a certified copy of conviction, without more, is proper propensity evidence under [section 115-7.4]." Instead, the court discussed the two most instructive cases it could locate, *People v. Sundling*, 2012 IL App (2d) 070455-B, 965 N.E.2d 563, and *People v. Fields*, 2013 IL

App (3d) 080829-B, 99 N.E.2d 1 (*Fields I*). (We note that *Fields I* was vacated by supervisory order (*People v. Fields*, No. 117121 (Ill. Mar. 26, 2014) (supervisory order)) and on remand the Third District reversed the judgment of the trial court on separate but related grounds (*People v. Fields*, 2015 IL App (3d) 080829-C, 27 N.E.3d 704 (*Fields II*)). The reasoning of *Fields I* discussed herein remains unaffected.) Both cases applied section 115-7.3 (725 ILCS 5/115-7.3 (West 2012)), a statute nearly identical to 115-7.4 that permits the introduction of propensity evidence regarding certain sex offenses.

¶ 87                                         i. *People v. Sundling*

¶ 88             In *Sundling*, in a prosecution for aggravated criminal sexual abuse, the trial court allowed the State's motion to admit under section 115-7.3 the following evidence of the defendant's prior commission of sex offenses: (1) a certified copy of conviction and docketing statement for a 1984 Cook County conviction of two counts of indecent liberties with a child; (2) the charging document and sentencing order for a 1997 Michigan conviction of attempted criminal sexual conduct; and (3) the docket sheets, court order, information, and probable cause affidavit for a 1997 Indiana conviction for child molestation. *Sundling*, 2012 IL App (2d) 070455-B, ¶ 74. The defendant was convicted following a bench trial and argued on appeal that the trial court erred by admitting this evidence. *Id.* ¶¶ 1, 74.

¶ 89             The appellate court concluded that the trial court erred by admitting all three categories of evidence. *Id.* ¶¶ 79, 85. Specifically, the certified copy of conviction and docketing statement for the 1984 Cook County conviction and the 1997 Michigan conviction "provided no set of facts for the trial court to determine if there were any similarities between that offense and the present case." *Id.* ¶ 79. The 1997 Indiana probable cause affidavit provided factual detail but was inadmissible hearsay. *Id.* ¶ 82. (We note the *Sundling* court did not discuss any of the other

court documents associated with the Indiana offense.)

¶ 90 The trial court in the present case found "the facts and issues in *Sundling* to be similar to this case." We disagree. In *Sundling*, by offering only the certified copies of conviction, the State did not provide the trial court with any facts surrounding the Cook County and Michigan convictions. Consequently, the court was unable to conduct the balancing test required by section 115-7.3 to make a threshold determination of admissibility. Here, by attaching the probable cause affidavits to its motion, the State provided sufficient facts for the trial court to conduct the balancing test required under section 115-7.4. Indeed, in this very case, the trial court found that "the proximity in time and factual similarities of the prior offenses weigh in favor of admitting some evidence related to the prior convictions in this case."

¶ 91 Additionally, in *Sundling*, the trial court admitted the probable cause affidavit related to the Indiana conviction instead of a certified copy of conviction. Here, the State seeks admission of only the certified copies of conviction and acknowledges that admission of affidavits would be improper.

¶ 92 Accordingly, the problems underlying the trial court's admission of propensity evidence in *Sundling* simply do not exist in the case before us.

¶ 93 ii. *People v. Fields*

¶ 94 The trial court also discussed *Fields I*, a procedurally complicated case in which a certified copy of conviction and live testimony from the victim of that offense were admitted at the defendant's jury trial under section 115-7.3. *Fields I*, 2013 IL App (3d) 080829-B, ¶¶ 6-8. Following the defendant's conviction, the appellate court rejected the defendant's argument that a certified copy of conviction is not "evidence" within the meaning of section 115-7.3. *Id.* ¶ 21. The appellate court concluded that a plain reading of section 115-7.3 did not limit admissible evidence

to testimony, and wrote the following:

> "Sometimes the only evidence of such crimes is the testimony of the victim and other appropriate witnesses or evidence of the defendant's admission that he committed the act(s). Where, as here, [the] defendant has actually been convicted of the 'other crime,' a certified copy of the conviction is certainly evidence of its commission. We note section 115-7.3(b) expressly references 'commission of another offense.' [Citation.] A certified conviction constitutes some fact that shows defendant has been proven to the satisfaction of a jury to have committed 'another offense.' Thus, we believe section 115-7.3 contemplates and authorizes admission of certified convictions as 'evidence.' " *Id.* ¶ 23.

¶ 95    The appellate court went on to affirm the trial court's admission of the certified copy of conviction.

¶ 96    The trial court in the present case found that, although *Fields I* held that certified copies of conviction were admissible under section 115-7.3, the appellate court in *Fields I* "did not offer an opinion as [to] whether the certified conviction without additional testimony or some other evidence to put it in context was permissible."

¶ 97    However, we believe that the language in *Fields I* is both correct and instructive. In *Fields I*, the Third District observed that sometimes the only evidence that a defendant has committed an offense is the testimony of the victim. A logical corollary to this observation is that sometimes the only evidence that a defendant has committed an offense is the certified copy of his conviction. This would be the situation when the victim of the prior offense is unavailable, unable to be located, or deceased. Disallowing admission of a certified copy of conviction in such instances because it could not be accompanied by live testimony would defeat the purpose of the

- 25 -

statute and be illogical. See *Dabbs*, 396 Ill. App. 3d at 627, where the court stated the following:

> "[D]omestic violence is generally a repetitive and secretive crime that is highly unreported and typically becomes a credibility contest between the alleged abuser and victim. [Citation.] Section 115-7.4 attempts to address the difficulties of proof unique to the prosecution of domestic violence crimes by strengthening the evidence in such cases and promoting the prosecution of such cases."

¶ 98 As the *Fields I* court noted, " 'Evidence' includes all of the means by which alleged facts are proved or disproved. [Citation.] It can be real or documentary. [Citation.] It encompasses testimony delivered by witnesses and records, documents, objects, stipulations, and facts judicially noticed." *Fields I*, 2013 IL App (3d) 080829-B, ¶ 22. The *Fields I* court continued, "We find nothing in the definition of 'evidence' or the language of the statute to support defendant's restrictive interpretation of the term 'evidence' as used in section 115-7.3." *Id.* ¶ 24.

¶ 99 As the State points out, section 115-7.4(d) explicitly provides that "proof [of a defendant's propensity to commit acts of domestic violence] may be made by *specific instances of conduct.*" (Emphasis added.) 725 ILCS 5/115-7.4(d) (West 2020). We agree with the State that a certified copy of conviction is the best evidence that a defendant has committed a previous act of domestic violence. See also *Fields II*, 2015 IL App (3d) 080829-C, ¶ 25 ("At trial, the State correctly argued that the admission of the conviction was extremely probative to show defendant's propensity to commit the charged offense" and "[the prior victim's] testimony standing alone is much less compelling than an actual conviction of the same alleged conduct.").

¶ 100 Indeed, the *Fields I* court found the defendant's suggested reading of section 115-7.3—to permit only testimonial evidence—improperly added the limiting term "testimonial" into the plain language of section 115-7.3. *Fields I*, 2013 IL App (3d) 080829-B, ¶ 21. Similarly,

to read section 115-7.4 to require the admission of live testimony as a prerequisite to the admission of a certified copy of conviction also reads terms into the plain language of the statute that simply are not there. See *People v. Gorss*, 2022 IL 126464, ¶ 10 ("[W]here the language used [in a statute] is plain and unambiguous, [a reviewing court] may not 'depart from its terms' or read into the rule exceptions, limitations, or conditions that conflict with the drafters' intent.").

¶ 101　　　　　Accordingly, based upon the explanation the trial court provided for its denial of the State's third motion *in limine*, we conclude that the trial court erred by denying that motion. The State established that the relevant purpose of the certified copies of conviction was to prove defendant's propensity to commit acts of domestic violence. The State provided sufficient factual details underlying the convictions to enable the court to conduct the balancing test required by section 115-7.4. After considering these factual details, the trial court found that "the proximity in time and factual similarities of the prior offenses weigh in favor of admitting some evidence related to the prior convictions in this case." The trial court's ultimate conclusion, however, that undue prejudice resulting from the admission of the certified copies of conviction alone would outweigh their probative value was rooted in misapprehension of the applicable law.

¶ 102　　　　　We conclude that the certified copies of conviction alone are admissible evidence of defendant's propensity to commit acts of domestic violence. On remand, the trial court should admit the certified copies of conviction as the State has requested.

¶ 103　　　　　　　　　　　　　III. CONCLUSION

¶ 104　　　　　For the reasons stated, we reverse the judgment of the trial court and remand for further proceedings.

¶ 105　　　　　Reversed and remanded.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Macon County, No. 21-CF-518; the Hon. Rodney S. Forbes, Judge, presiding. |
| **Attorneys for Appellant:** | Scott Rueter, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and James Ryan Williams, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Catherine K. Hart, and Sarah G. Lucey, of State Appellate Defender's Office, of Springfield, for appellant. |